FILED

1  K. Andrew Kent (SBN 130097)
   Gregory N. Albright (SBN 145547)
2  RINCON VENTURE LAW GROUP
   2815 Townsgate Rd., Suite 215
3  Westlake Village, California 91361
   Telephone: (805) 557-0580
4  Facsimile: (805) 557-0480
   Email: akent@rincongroup.com
5  Email: galbright@rincongroup.com

6  Attorneys for Plaintiff
   ORIGINOIL Inc.
7

2012 SEP 25 PM 4:05

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY _____

8              **UNITED STATES DISTRICT COURT**

9             **CENTRAL DISTRICT OF CALIFORNIA**

10

11  ORIGINOIL, INC, a Nevada corporation,

12              Plaintiff,

13      vs.

14

15  MBD Energy Limited, an Australian Public
16  Company,

17              Defendant.

18

Case No. **CV 12-8278-GW (PJWx)**

**COMPLAINT FOR:**
**(1) BREACH OF CONTRACT;**
**(2) CONVERSION;**
**(3) FRAUDULENT NON-**
**DISCLOSURE; AND**
**(4) UNFAIR COMPETITION.**

**DEMAND FOR JURY TRIAL**

19

20

21

22

23

24

25

26

27

28

1
Complaint

## PRELIMINARY STATEMENT

1.   Plaintiff OriginOil Inc. ("OOIL") brings this action to protect its investment in breakthrough technology for harvesting algae so it can be processed for use in a variety of  commercial applications.  As explained below Defendant MBD Energy Limited ("MBD") has breached its promises not to use or disclose OOIL's confidential intellectual property and has, among other things, wrongfully claimed OOIL technology as its own in an application that MBD filed for patent protection.

## PARTIES

2.   Plaintiff OriginOil Inc. ("OOIL") is a Nevada corporation with its principal place of business in Los Angeles, Los Angeles County, California.

3.   OOIL is informed and believes, and on that basis avers, that Defendant MBD Energy Limited ("MBD") is an Australian venture-backed private company, with its principal place of business in Melbourne, Victoria, Australia.

## JURISDICTION AND VENUE

4.   This Court has subject matter jurisdiction of OOIL's claims pursuant to 28 U.S.C. § 1332(a)(2) (diversity) because OOIL is a citizen of a State and MBD is a citizen of a foreign state, and the matter in controversy exceeds $75,000, exclusive of interest and costs.

5.   Venue is proper in this District under 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district, and because MBD is subject to personal jurisdiction in this judicial district, including by virtue of the forum selection clauses in the contracts averred below.

## FACTUAL BACKGROUND

### OOIL And Its Technology

6.   OOIL has developed an energy production process for harvesting algae and cleaning up oil and gas water.  Operating at the first stage of extraction, this high-speed and chemical-free process can be embedded in other systems to improve performance. OOIL is a pure technology company.  Its business model is to embed its technology into

the systems that other companies build and sell, through joint ventures, private labeling and licensing agreements.  The OOIL process is designed to control the harvesting of algae and is intended to result in a concentrate that can be either converted by other companies into bio-oil, bio-gas or bio-carbon for refining into fuel and chemicals, or further separated into lipids and biomass for processing by other companies into valuable products.  OOIL is now in the process of proving and marketing its systems for wide-scale distribution and licensing to distributors, manufacturers, engineering service firms, and specialty operators, as well as fuel refiners, chemical and oil companies.  The worldwide algae market is projected to reach $1.6 billion by 2015.  One-third will be in new replacement technologies like OOIL's.  OOIL's projected share of this addressable market for the exploitation of its unique technology is of  great value, and any impact or threatened impact from MBD's wrongful acts as described herein must be remedied to the full extent allowed by law.

7.     Harvesting algae is a challenge.  Microalgae grow suspended in large volumes of water; at harvest time, there may be up to 1,000 times more water than algae, or more.  This must be reduced to roughly a 10:1 ratio before the algae is useful for commercial applications.  Since the algae lives in microscopic suspension an additional challenge is presented, much like trying to clarify coffee after it is brewed.  Harvesting has traditionally been a high-cost activity, effectively preventing algae from taking its rightful place as petroleum's replacement.  Costs have been high both because dewatering processes have relied on chemicals or on heavy equipment, or both.  If chemicals are used, the water must be treated extensively before it can be used again for algae growing.  And if heavy equipment is used, there are high costs of energy, capital and operation that make production too expensive to compete with petroleum.

8.     Included in OOIL's proprietary technology is a unique system called Single Step Extraction™ ("SSE") that is chemical-free, low-energy, high-flow, and low-cost. SSE can do more than just dewater; it can rupture tough algae cell walls (a process called "lysing") to free up oils and other valuable cellular components that downstream vendors

can separate out from the biomass and water.  SSE takes advantage of algae's high sensitivity to electromagnetic waves.  OOIL has learned to generate wave patterns that cause the algae to come out of solution (or "flocculate") and to rupture (or "lyse").  The SSE process uses long, specially-designed tubes through which the algae travels as it gradually comes out of solution, the cells being optionally ruptured.

9.    Within the past year, OOIL has also developed a second process that concentrates the flocculated algae into an intermediate feedstock for further downstream refinement, solves the problem of collection, and reduces the need for other concentration devices.  This process and SSE are integrated into OOIL's product line, the Algae Appliance™, a high-speed, continuous-process, chemical-free algae harvester that can be scaled to any production need.

10.    On or about April 20, 2010, OOIL filed a Patent Cooperation Treaty ("PCT") application, number PCT/US1020/031756, for "Systems, Apparatus and Methods for Obtaining Intracellular Products and Cellular Mass and Debris from Algae and Derivative Products and Process of Use thereof" (the "'756 Application"), with the World Intellectual Property Organization ("WIPO") in Geneva, Switzerland.  On or about October 28, 2010, WIPO published the '756 Application, with publication number WO/2010/12903.

## The Parties' Agreements

11.    In or about April 2010, Larry Sirmans, MBD's then-Technical Director, approached OOIL with a need to provide large-scale algae harvesting at MBD's power plant sites.  The first stage was to be a research system at MBD's test facility at James Cook University ("JCU") in Townsville, Northern Queensland, Australia.  After validation of the system at the test facility, MBD was to scale up its purchases of OOIL equipment.  In industry parlance, MBD is a "systems integrator," combining the technology of other companies to create a complete algae production solution for power plant operators and other end-users of algae applications.

12.    To facilitate their discussions and possible business relationship, OOIL and

MBD made and entered into a written "Mutual Non-Disclosure Agreement" (the "NDA") as of April 19, 2010.  OOIL is informed and believes and therefore avers that MBD has an executed copy of the NDA in its possession, and is familiar with its terms.  The NDA contains the following pertinent provisions:

a.      MBD acknowledged that during the course of discussions or business between the parties, OOIL's confidential and proprietary information (the "OOIL IP") might be disclosed to MBD (NDA ¶ 1);

b.      MBD agreed to hold the OOIL IP in confidence (NDA ¶ 2.a);

c.      MBD agreed to use the IP only for the purposes of discussions with OOIL or their joint business efforts (NDA ¶ 2.b);

d.      MBD agreed not to allow copying or duplication of the OOIL IP, except for the purposes of discussions with OOIL or their joint business efforts, without OOIL's prior written approval (NDA ¶ 2.c);

e.      MBD agreed to limit access to the OOIL IP to persons with a need to know it (NDA ¶ 2.d);

f.      MBD agreed not to reverse engineer, decompile, disassemble, duplicate performance characteristics of, or create derivative works based upon, the OOIL IP (NDA ¶ 2.g);

g.      MBD agreed to return all OOIL IP, and all variations of it or derivative works, at OOIL's request (NDA ¶ 3);

h.      MBD agreed that "breach or threatened breach" of the NDA "would cause irreparable injury for which there may be no adequate remedy at law," and MBD agreed that in addition to any other remedies available as a result of a breach or threatened breach OOIL "shall have the right to seek equitable and injunctive relief," and MBD "waive[d] any requirement for posting of a bond or security" (NDA ¶ 8); and

i.      MBD agreed that the NDA is governed by California law (NDA ¶ 11).

13.      OOIL and MBD executed a Memorandum of Understanding on or about May 7, 2010, and in or about June 2010, MBD committed to test scale equipment at its

JCU research site.  MBD purchased equipment from OOIL, including the SSE system, and work commenced.

14.    In or about September 2010, MBD and OOIL executed a written "Master Project Agreement" with an Effective Date of June 1, 2010 (the "MPA").  On information and belief, MBD has an executed copy of the MPA in its possession, and is familiar with its terms.  Pursuant to the MPA, OOIL provided certain algae production equipment and related services to MBD pursuant to Purchase Orders which, when fully executed, became part of the MPA and subject to its terms. In consideration of MBD's promises in the MPA, OOIL granted MBD territorial exclusivity in Australia and New Zealand (*i.e.*, OOIL agreed not to sell the same products to any other party in that territory) as more specifically provided in paragraph 3.1 of the MPA.  The MPA also includes the following pertinent terms:

a.    MBD "acknowledge[d] that significant Intellectual Property … is embodied in the Products and OOIL systems and activities, that MDB has no interest therein and that no transfer or license of such Intellectual Property is implied or will occur in connection with [the MPA] or any project thereunder, except for any applicable software end-user license agreement" (MPA ¶ 16.1);

b.    MBD also agreed that "[i]n the event that MBD conceives, reduces to practice or develops (in whole or in part, either alone or jointly with others) any additional inventions or discoveries ('Developments') relating to OOIL Technology then all right, title and interest in such Developments shall be the property of OOIL and MBD shall assign and does hereby assign, to OOIL such Developments and all rights thereto, including Intellectual Property" (MPA ¶ 16.4);

c.    The MPA includes MBD's promises to help OOIL support the equipment that OOIL provided to MBD under the MPA; specifically:

i.    MBD agreed that it would "name a single person for business and technical liaison and this person, or a substitute, [would] respond to communications within six (6) hours on a business day, or twelve (12) hours on a weekend, US and

Australian holidays not included (MPA ¶ 4.1);

      ii.    MBD agreed that, "[t]o minimize OOIL's support costs," MBD would "ensure that an OOIL-trained person [was] available at all times" (MPA ¶ 4.2);

      iii.    MDB agreed that it would "maintain the Products in good working order and condition," and would "assist OOIL, without charge, with the repair or replacement of components as needed, as determined in OOIL's reasonable discretion, and with documentation of operational, maintenance, repair and replacement activities" (MPA ¶ 7.1);

      iv.    MBD agreed to indemnify and hold OOIL harmless from and against "any and all claims, losses, damages and expenses (including without limitation reasonable attorney's fees and related costs of litigation)" arising out of MBD's breach or nonperformance of its obligations or the gross negligence or willful misconduct of MBD or its employees (MPA ¶ 9.1); and

      v.    MBD agreed to "designate a single person for business and technical liaison" who would "make all reasonable efforts to respond to communications from [OOIL] within six (6) hours on a business day or twelve (12) hours on a weekend, U.S. and Australian holidays excepted" (MPA ¶ 14);

    d.    The MPA may be terminated for cause if MBD "fails to perform any of its material obligations" and "fails to cure such Default within thirty (30) calendar days after written notice of the Default from the other Party" (MPA ¶ 2.2.3); and

    e.    The MPA is governed by California law; MBD agreed that a legal action under the MPA could be brought in "the United States District Court for the Central District of California"; and MBD submitted to this Court's jurisdiction and waived any objection that venue in this judicial district is proper (MPA ¶ 20).

    15.    By December 2010, MBD had pronounced the SSE system successful. MBD decided to build OOIL's SSE system into its end-to-end process that they were building at the Tarong Power Station ("Tarong"), in Queensland, Australia – one of Australia's three largest coal-fired power plants.  The project at Tarong began with a one

hectare (2.5 acre) test site.  MBD ordered a transitional 10 gallon-per-minute ("GPM")
extraction unit from OOIL for the test site in or about January 2011.

16.     In or about March 2011, MBD placed a Purchase Order with OOIL for a 300
GPM SSE that was capable of concentrating algae produced at the Tarong site.  The
purchase price was $650,000, and the anticipated delivery was the second quarter of
2012.  In or about August 2011, MBD sought to renegotiate the large system Purchase
Order because MDB wanted to move up the delivery date to the end of 2011.  The parties
agreed to break the system into three 75 GPM units, so the first unit could be delivered
over the New Year holidays, and the $650,000 Purchase Order was revised upward to
$850,000.

17.     In or about September 2011, OOIL notified MBD that the 10 GPM unit was
ready for shipment.  Mr. Sirmans observed the unit's proper functioning, inspected it, and
accepted it on behalf of MBD.  OOIL shipped the unit to Tarong where, OOIL is
informed and believes and therefore avers, it is still uncrated.

18.     At MBD's request, in late October 2011 a further change was made to the
Purchase Order regarding the units for the Tarong site.  MBD was pursuing a contract for
a Thailand project, and wanted to reduce the hardware at Tarong and designate some
units for the Thailand project.  OOIL was given the go-ahead for the Tarong units, but the
Thai units had to wait until MBD had a contract in place for the Thai project, which
OOIL was led to believe would be in place by December 2011, for delivery of the Thai
units in March 2012.

19.     As called for by the accelerated schedule that MBD had itself requested,
OOIL worked through the holidays to prepare the 75-GPM units for delivery to Tarong.
In January 2012, however, MBD tried to push back delivery dates to the end of March
2012.  OOIL responded that it had been going full-out to deliver on the earlier rush
schedule, and some $400,000 in payments would be coming due in the next 30 days.
Ultimately an agreement was made, and OOIL issued an invoice at the end of January
2012.

## MBD's Wrongful Acts

20.     OOIL is informed and believes, and therefore avers, that – unbeknownst to OOIL at the time and without contractual compliance or OOIL approval – on or about January 1, 2011 MBD filed a PCT application with WIPO for a patent, application number PCT/AU2011/000828 for "Harvesting Microorganisms" (the "'828 Application").

21.     On or about January 5, 2012, WIPO published the '828 Application, with publication number WO/2012/000056.  WIPO's publication includes an Independent Search Result that cites OOIL's '756 Application as an X reference against the '828 Application for lack of novelty.

22.     After WIPO's publication of the '828 Application, OOIL reviewed it and discovered that MBD had wrongfully copied and claimed OOIL's SSE process in the '828 Application, and had disclosed in MDB's patent application certain OOIL confidential IP that had not been previously disclosed by OOIL in its own '756 Patent application.  MBD has refused to acknowledge its wrongful appropriation of OOIL's technology in the '828 Application, and has ignored OOIL's request for assignment coupled with a license to MBD as provided for under the MPA.

23.     OOIL is informed and believes, and therefore avers, that in November 2011 MBD submitted false inventorship declarations to WIPO in support of MBD's '828 Application, through which MBD falsely claimed its representatives were the joint inventors of technology which in fact is part of OOIL's SSE process, having been developed and owned at all times by OOIL.  OOIL is further informed and believes, and therefore alleges, that the declarations filed by MBD expressly acknowledge the duty to disclose information known to be material to patentability as defined by 37 C.F.C. § 1.56, and include the following affirmation under United States law:

> "I hereby declare that all statements made herein of my own knowledge are true
> and that all statements made on information and belief are believed to be true; and
> further that these statements were made with the knowledge that willful false

statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon."

24.    In addition, as explained more fully below, MBD has refused to cooperate with OOIL's support of equipment that OOIL provided to MBD, in material breach of the MPA, as a pretext for halting its performance under the MPA, while at the same time wrongfully claiming OOIL's SSE technology within the claims of the '838 Application.

25.    In late 2011, while OOIL's work at Tarong was ongoing, MBD decided to also start growing new salt-water algae at their research site at JCU.  This required an upgrade to OOIL's equipment at JCU, and OOIL agreed to provide this upgrade at no charge to MBD, even though the equipment at JCU was no longer under warranty and was not covered by a service contract.

26.    In March 2012, MBD asked OOIL to implement the JCU upgrade immediately, before the commissioning of the heavy equipment at the Tarong site.  To expedite this, MBD agreed to pay an OOIL engineer's costs to travel to the site before the scheduled commissioning of the Tarong units.  OOIL made the upgrade at JCU that MBD had requested, and the equipment worked well.

27.    After OOIL's personnel returned to California, however, MBD management claimed that the upgraded equipment at JCU did not work at all.  But no one at MBD ever called for technical support, and OOIL was unable to reach the MBD equipment operator to troubleshoot.  To this day the MBD operator has never responded, and MBD has refused to make him available.

28.    OOIL ultimately decided to build a duplicate unit in Los Angeles, so it could be tested as a replacement for the unit at JCU.  In order for this to work, however, OOIL needed data from MBD about why the original unit at JCU supposedly did not work.

29.    In early August 2012, MBD finally sent OOIL a report on supposed problems with the upgraded unit at JCU.  But those "problems" indicated operator errors

1  that OOIL needed to investigate and, as averred above, MBD refused to cooperate with

2  any such investigation.  In sum, MBD has prevented OOIL from correcting any supposed

3  problems with the unit at JCU, in an apparent effort to create the false appearance of an

4  excuse for its breaches.

5       30.  MBD's actions have clouded title to OOIL's cutting-edge technology,

6  impaired OOIL's ability to secure agreements with third parties, and cost OOIL the

7  opportunity during the critical phase transitioning from development to

8  commercialization to prove its technology in commercial relationship with a company

9  that might help OOIL, rather than try to misappropriate OOIL's technology as its own, as

10 MBD has done.  Having been awarded the pilot project for licensed use of OOIL

11 technology, MBD's wrongful acts have thus harmed OOIL's commercialization of its

12 technology and caused monetary damage presently estimated at $250 million.

### FIRST CLAIM FOR RELIEF

**(Breach of Contract – Non-Disclosure Agreement; against MBD)**

15      31.  OOIL incorporates each of the averments in paragraphs 1 through 29 above

16 as if fully set forth herein.

17      32.  The NDA is a binding written contract that continues in force and effect.

18      33.  OOIL is informed and believes, and therefore avers, that MBD has

19 materially breached the NDA by, among other things: (a) failing to maintain OOIL's IP

20 in confidence; (b) using OOIL's IP for purposes that were not authorized by the NDA,

21 including without limitation for purposes of applying for the '828 Application; (c)

22 copying or duplicating OOIL's IP without OOIL's prior written approval; (d) disclosing

23 OOIL's IP to persons who did not have a need to know it for proper purposes under the

24 NDA, and disclosing OOIL's IP as part of MBD's '828 Application; (e) reverse

25 engineering and/or creating derivative works based upon OOIL's IP; and (f) inducing

26 MBD representatives to falsely claim to be inventors of OOIL's SSE process, in

27 connection with MBD's application for a patent that wrongfully includes OOIL's IP.

28      34.  OOIL has performed each of its obligations under the NDA, except for any

obligations for which its performance was excused because of MBD's breach or for other reasons.

35.    As a proximate result of MBD's material breaches of the NDA, OOIL has suffered damages in an amount to be proven at trial.

36.    OOIL is also entitled to each of the specific remedies provided in the NDA, including without limitation: (a) return of all of OOIL's IP pursuant to paragraph 3 of the NDA; and (b) equitable and injunctive relief pursuant to paragraph 8 of the NDA.

## SECOND CLAIM FOR RELIEF

### (Breach of Contract – Master Project Agreement; against MBD)

37.    OOIL incorporates each of the averments in paragraphs 1 through 36 above as if fully set forth herein.

38.    The MPA is a binding and enforceable written contract.

39.    OOIL is informed and believes, and therefore avers, that MBD has materially breached the MPA by, among other things: (a) falsely claiming to own OOIL's IP, including the SSE process; (b) filing the '828 Application without OOIL's authorization or knowledge, and asserting(contrary to MBD's contractual covenants and to the truth) ownership of OOIL's SSE process therein; (c) coercing MBD representatives to falsely assert in declarations to be inventors of OOIL's SSE process, in connection with the '828 Application for a patent that wrongfully includes OOIL's IP; (d) refusing to cooperate with OOIL's repair or support of the upgraded equipment at JCU; (e) failing to make MBD's representatives available for purposes of repair or support of the upgraded equipment at JCU; (f) failing to proceed with installation of OOIL's units at Tarong; (g) failing to pay all amounts due on OOIL's invoices; and (h) breaching the provisions of the NDA, as averred above, which NDA is incorporated by reference in the MPA in paragraph 17.

40.    OOIL has performed each of its obligations under the MPA, except for any obligations for which its performance was excused because of MBD's breach or for other

reasons.

41.     As a proximate result of MBD's material breaches of the MPA, OOIL has suffered damages in an amount to be proven at trial.

42.     OOIL is also entitled to each of the remedies provided in the MPA, including without limitation: (a) specific performance of MBD's obligation to assign to OOIL any inventions or discoveries relating to OOIL Technology as defined in the MPA (including without limitation the SSE process), including without limitation each part of the '828 Application that includes OOIL Technology; (b) return of OOIL's materials as provided in paragraph 18 of the MPA; (c) indemnification and reimbursement of all losses, damages and expenses, including attorneys' fees and litigation costs, resulting from MBD's breaches, gross negligence and willful misconduct as described above or otherwise required to rectify those acts or to mitigate and remedy any losses, damages and expenses; and (d) equitable and injunctive relief pursuant to paragraph 8 of the NDA, which is incorporated by reference in paragraph 17 of the MPA.

## THIRD CLAIM FOR RELIEF

### (Conversion)

43.     OOIL incorporates each of the averments in paragraphs 1 through 42 above as if fully set forth herein.

44.     OOIL owned and had the right to possess the OOIL Information that was described in paragraph 1 of the NDA, and the materials described in paragraph 18 of the MPA (the "Information and Materials").

45.     OOIL is informed and believes and therefore avers that MBD intentionally took possession of, and has wrongfully exercised dominion over, the Information and Materials, without OOIL's consent.

46.     As a proximate result of MBD's wrongful acts OOIL has been harmed in an amount to be proven at trial.  MBD's conduct was a substantial factor in causing OOIL's harm.

47.     OOIL is informed and believes and therefore avers that MBD acted with

oppression, fraud or malice, and OOIL is therefore entitled to recover exemplary damages.

## FOURTH CLAIM FOR RELIEF

### (Fraudulent Non-Disclosure)

48.     OOIL incorporates each of the averments in paragraphs 1 through 47 above as if fully set forth herein.

49.     Under the terms of the NDA and the MPA, and by virtue of the confidential relationship between the parties, MBD had a duty to disclose any patentable and non-patentable inventions and discoveries relating to OOIL technology, and necessarily to disclose any proposed application(s) that MBD believed should be filed for patent protection relating to OOIL's technology.

50.     MBD actively concealed from OOIL the fact that MBD had prepared and then filed the '828 Patent Application with WIPO on or about January 2, 2011.

51.     OOIL did not know that MBD had filed the '828 Patent Application until WIPO published the '828 Patent Application on or about January 5, 2012.

52.     OOIL is informed and believes and therefore avers that MBD intended to deceive OOIL by concealing its filing of the '828 Patent Application.

53.     OOIL reasonably relied on MBD's deception.

54.     As a proximate result of MBD's wrongful acts, OOIL has been harmed in an amount to be proven at trial.

55.     MBD's concealment was a substantial factor in causing OOIL's harm.

56.     OOIL is informed and believes and therefore avers that MBD acted with oppression, fraud or malice, and OOIL is therefore entitled to recover exemplary damages.

## FIFTH CLAIM FOR RELIEF

### (Unfair Competition)

57.     OOIL incorporates each of the averments in paragraphs 1 through 56 above as if fully set forth herein.

58.     MBD's conduct as averred above is and was deceptive, unlawful, unfair or fraudulent within the meaning of California Business & Professions Code Section 17200, and constitutes unfair competition under California common law.

59.     OOIL is entitled to restitution and disgorgement of all property and money received by MBD as a result of its unfair business practices, in an amount to be proven at trial.  OOIL is further entitled to preliminary and permanent injunctive relief against MBD's unfair practices.

## **PRAYER FOR RELIEF**

WHERFORE, OOIL respectfully requests judgment against MBD as follows:

1.     For contract damages in an amount to be proven at trial;

2.     For tort damages in an amount to be proven at trial;

3.     For exemplary damages;

4.     For temporary, preliminary and permanent injunctive relief;

5.     For an order of specific performance, compelling MBD to assign to OOIL the '828 Application, all claims described therein, and all IP relating thereto;

6.     For an order compelling MBD to return to OOIL all "Information" within the scope of paragraph 3 of the NDA, and all materials within the scope of paragraph 18 of the MPA;

7.     For an order declaring the rights and obligations of the parties under the NDA and the MPA;

8.     For OOIL's costs of suit herein;

9.     For OOIL's reasonable attorney's fees relating to this litigation;

///
///
///
///
///

1  and

2      10.    For such further relief as the Court deems just and proper.

3                              Respectfully submitted,

4

5  DATED:  September 25, 2012          RINCON VENTURE LAW GROUP

6                              By:   ___/s/  K. Andrew Kent_____
7                                    K. Andrew Kent
                                     Attorneys for Plaintiff
8                                    ORIGINOIL, INC.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **DEMAND FOR JURY TRIAL**

OOIL demands a jury trial of all the issues so triable, as provided by Rule 38 of the Federal Rules of Civil Procedure.

Respectfully submitted,

DATED:  September 25, 2012          RINCON VENTURE LAW GROUP


By:  __/s/  K. Andrew Kent_____
        K. Andrew Kent
Attorneys for Plaintiff
ORIGINOIL, INC.

Complaint

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge George H. Wu and the assigned discovery Magistrate Judge is Patrick J. Walsh.

The case number on all documents filed with the Court should read as follows:

## CV12- 8278 GW (PJWx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=============================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[ ] **Western Division**
312 N. Spring St., Rm. G-8
Los Angeles, CA 90012

[ ] **Southern Division**
411 West Fourth St., Rm. 1-053
Santa Ana, CA 92701-4516

[ ] **Eastern Division**
3470 Twelfth St., Rm. 134
Riverside, CA 92501

Failure to file at the proper location will result in your documents being returned to you.

K. Andrew Kent, Esq. (State Bar No. 130097)
RINCON VENTURE LAW GROUP
2815 Townsgate Road, Suite 215
Westlake Village, CA 91361
akent@rincongroup.com
Telephone: (805)557-0580
Facsimile: (805)557-0480

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ORIGINOIL, INC., a Nevada corporation <br><br>PLAINTIFF(S) <br><br> v. <br><br> MBD ENERGY LIMITED, an Australian Public Company <br><br> DEFENDANT(S). | CASE NUMBER <br><br> cv 12-8278 —GW(PJWx) <br><br><br> **SUMMONS** |

TO:   DEFENDANT(S):  <u>MBD ENERGY LIMITED</u>

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, _____K. Andrew Kent, Esq._____, whose address is _2815 Townsgate Road, Suite 215, Westlake Village, CA  91361_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

SEP  2 5 2012

Dated: _____

By: ____**MARILYN DAVIS**____

Deputy Clerk

*(Seal of the Court)*

1227

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

### UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

| | |
|---|---|
| I (a) PLAINTIFFS (Check box if you are representing yourself ☐)<br><br>ORIGINOIL, INC., a Nevada Corporation | DEFENDANTS<br><br>MBD ENERGY LIMITED, an Australian Public Company |
| (b) County of Residence of First Listed Plaintiff (Except in U.S. Plaintiff Cases):<br>Los Angeles County, California | County of Residence of First Listed Defendant (In U.S. Plaintiff Cases Only): |
| (c) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br>K. Andrew Kent, Esq. (State Bar No. 130097)<br>RINCON VENTURE LAW GROUP<br>2815 Townsgate Road, Suite 215         Telephone: (805) 557-0580<br>Westlake Village, CA 91361              Facsimile: (805) 557-0480 | Attorneys (If Known) |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff    ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant    ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☒ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☒ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes   ☒ No    ☒ MONEY DEMANDED IN COMPLAINT: $ more than $75,000

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. §1332(a)(2) (diversity) Breach of Contract and Unfair Competition

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS<br>PERSONAL INJURY | TORTS<br>PERSONAL PROPERTY | PRISONER<br>PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Fed. Employers' Liability | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 340 Marine | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | CIVIL RIGHTS | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☐ 355 Motor Vehicle Product Liability | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities /Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☒ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 444 Welfare | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | REAL PROPERTY | | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | | | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | FEDERAL TAX SUITS |
| | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**VIII(a). IDENTICAL CASES:** Has this action been previously filed and dismissed, remanded or closed?  ☒ No   ☐ Yes

If yes, list case number(s):

FOR OFFICE USE ONLY:    Case Number:    **CV12-8278**

CV-71 (07/05)                          CIVIL COVER SHEET                          Page 1 of 2

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

VIII(b).  RELATED CASES: Have any cases been previously filed that are related to the present case? ☑ No    ☐ Yes

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)    ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
                                ☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
                                ☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
                                ☐ D.  Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c _also is present._

IX. VENUE: List the California County, or State if other than California, in which EACH named plaintiff resides (Use an additional sheet if necessary)
☐ Check here if the U.S. government, its agencies or employees is a named plaintiff.

    Los Angeles County, California

List the California County, or State if other than California, in which EACH named defendant resides.  (Use an additional sheet if necessary).
☐  Check here if the U.S. government, its agencies or employees is a named defendant.

    Victoria, Australia

List the California County, or State if other than California, in which EACH claim arose.  (Use an additional sheet if necessary)
Note: In land condemnation cases, use the location of the tract of land involved.

    Los Angeles County, California

X.  SIGNATURE OF ATTORNEY (OR PRO PER): _____/s/ K. Andrew Kent_____   Date   September 25, 2012

Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but  is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended.  (42 U.S.C. (g)) |